IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 24-7 Machinery, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. CIV-23-159-PRW |
| WARREN POWER & MACHINERY, INC., et al., | ) ) ) |
| Defendants. | ) ) |

# ORDER

Before the Court are Motions to Dismiss filed by all three Defendants (Dkts. 45, 47, 51). The matters are fully briefed, and for the reasons that follow the Motions of Defendants Warren Power & Machinery, Inc. and Mustang Machinery Company, LLC are **GRANTED** and the Motion of Defendant Caterpillar, Inc. is **DENIED**.

## *Background*

This case concerns seven construction vehicles that did more idling than constructing. Plaintiff 24-7 Machinery, LLC ("24-7 Machinery") is an Oklahoma business that sells and leases construction equipment. Between October 10, 2019, and January 2, 2020, 24-7 Machinery purchased seven new Caterpillar Model 320 TC Medium Excavator construction vehicles (the "Purchased Units") from Defendant Warren Power & Machinery, Inc. ("Warren CAT"), an authorized Caterpillar dealership and service center incorporated in Delaware. The Purchased Units were covered by an extended warranty,

1

including a warranty for parts, by Defendant Caterpillar Inc. ("Caterpillar"), another Delaware corporation.

In early 2021, 24-7 Machinery rented the Purchased Units to a construction company working a large pipeline project in Texas. Beginning in March 2021, each of the Purchased Units broke down due to the same failed turbocharger piece part. 24-7 Machinery notified Warren CAT of the issues. Warren CAT, in turn, hired Defendant Mustang Machinery Company LLC ("Mustang CAT"), a Texas-based Caterpillar dealership and service center, to repair the Purchased Units. Those repairs were a long time coming, and the Purchased Units sat idle for between nine to twelve months. Defendants maintain that the delay was caused by difficulty sourcing replacement turbochargers. Plaintiff alleges that turbochargers were available, but that Defendants chose to profit from them rather than repairing the Purchased Units.

Plaintiff brought this action on February 15, 2023, on the basis of diversity jurisdiction.[1] The original complaint (Dkt. 1) raised negligence, contract, and antitrust causes of action. After Defendants filed a round of Motions to Dismiss (Dkts. 36, 39, 40), Plaintiff filed the Amended Complaint (Dkt. 45) at issue here. The Amended Complaint raises just two causes of action: negligence, and breach of contract. Again, Defendants each filed Motions to Dismiss (Dkts. 45, 47, 51), on jurisdictional grounds and for failure to state a claim, which are now before the Court.

---

[1] 28 U.S.C. § 1332.

**I. Personal Jurisdiction**

*Legal Standard*

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court must take as true all well-pleaded facts alleged in the complaint.[2] 24-7 Machinery, as Plaintiff, bears the burden of establishing personal jurisdiction, but at this stage it need only make a prima facie showing.[3] "[P]laintiff may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—'that if true would support jurisdiction over the defendant.'"[4]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[5] Because Oklahoma's long-arm statute extends personal jurisdiction to bounds "consistent with the U.S. Constitution," the analysis "'collapses into a single due-process analysis' under the Constitution."[6]

---

[2] *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964–65 (10th Cir. 2022).

[3] *Id.*

[4] *Id.* (quoting *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020)).

[5] *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286–87 (10th Cir. 2007).

[6] *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)).

For a Court to exercise specific personal jurisdiction[7] over a non-resident defendant, that defendant must have "'minimum contacts' with the forum state, such that having to defend the lawsuit there would not offend traditional notions of fair play and substantial justice."[8] "[T]he contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'"[9] "[T]he 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' [a] defendant's forum-related activities."[10]

For a business-related tort, "purposeful direction" may be analyzed using the *Calder* "effects" test.[11] That test asks whether an out-of-state defendant's tortious conduct satisfies three elements: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) . . . knowledge that the brunt of the injury would be felt in the forum state." Under the second element, the defendant's conduct, not plaintiff's contacts, is key.[12] "[T]he forum state must be the 'focal point' of *the defendant's* tortious conduct."[13]

---

[7] 24-7 Machinery does not argue that the Court has general personal jurisdiction over Mustang CAT.

[8] *Eighteen Seventy*, 32 F.4th at 965 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).

[9] *XMission*, 955 F.3d at 839–40 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[10] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[11] *Eighteen Seventy*, 32 F.4th at 966–67, 966 n.9.

[12] *Id.* at 968–69.

[13] *Id.* (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013)).

*Analysis*

Of the three Defendants, only Mustang CAT raises a 12(b)(2) challenge to the Court's personal jurisdiction. Mustang CAT argues that 24-7 Machinery was its only connection to Oklahoma, and that it did not purposefully direct its activities towards the state. In particular, Mustang CAT references *Speedsportz, LLC v. Menzel Motor Sports, Inc.*,[14] a Northern District of Oklahoma case that involved a Mercedes owned by an Oklahoma corporation that was repaired (allegedly in a non-workmanlike fashion) by a California-based company in California. The *Speedsportz* court conducted a lengthy analysis, ultimately finding that the plaintiff had failed on several different grounds to demonstrate personal jurisdiction.[15] Mustang CAT also argues that exercising jurisdiction over it would violate principles of fair play and substantial justice.

In its Response (Dkt. 55), 24-7 Machinery provides a list of alleged facts, supported by several attachments, that it says demonstrate Mustang CAT's minimum contacts with Oklahoma.[16] Among these are Mustang CAT's alleged communications with 24-7 Machinery. 24-7 Machinery attaches a single email it received from a Mustang CAT sales

---

[14] No. 07-CV-624-TCK-TLW, 2009 WL 2921295 (N.D. Okla. 2009).

[15] *See id.* at *5–10.

[16] The Court considers these documents for the sole purpose of determining whether 24-7 Machinery has made out a prima facie case for personal jurisdiction. *See XMission*, 955 F.3d at 839; *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) ("The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."). 24-7 Machinery similarly includes attachments to its Response to the other Motions. In considering those 12(b)(6) challenges, the Court disregards those exhibits and decides the Motions on the merits of the pleadings alone.

representative, which lists the machines it had inspected at the pipeline project.[17] 24-7 Machinery also highlights its allegation that "Mustang CAT accepted the work from a request originating in Oklahoma," and that Mustang CAT solicited and accepted payments from 24-7 Machinery. An affidavit by a 24-7 Machinery representative is attached to the Response, restating these allegations.[18] Finally, 24-7 Machinery argues that Mustang CAT could have simply chosen to not do business with Oklahoma entities if it did not want to be haled into court in Oklahoma.

24-7 Machinery's argument hits a stumbling block at the first element of the *Calder* test. The Amended Complaint (Dkt. 42) levies a Count of "negligence and/or failure to exercise due care" against Mustang CAT. Needless to say, negligence claims generally do not involve "intentional action."[19] Even assuming that intentional conduct was involved, and accepting as true the facts alleged in the Amended Complaint and the affidavit, the Court struggles to see how Oklahoma was the focal point of said conduct. Mustang CAT, a Texas company, was approached to perform repairs on excavators that had broken down in Texas while working on a Texas project. In the course of that work, Mustang CAT undoubtedly communicated with 24-7 Machinery, and knew that 24-7 Machinery was an Oklahoma entity. But purposeful direction, and therefore specific personal jurisdiction, requires more.[20] This is not a case where an out-of-state defendant had an existing

---

[17] Ex. B (Dkt. 55-2).

[18] Ex. C (Dkt. 55-3).

[19] *See Speedsportz*, 2009 WL 2921295, at *9, and cases cited therein.

[20] *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 289 (2014) ("Petitioner's actions in Georgia did not create sufficient contact with Nevada simply because he allegedly directed his

relationship with or special knowledge of a forum plaintiff, or acted with the express purpose of causing some effect in the forum state.[21]

Mustang CAT's contacts with Oklahoma, as alleged in the Amended Complaint, were not purposefully directed at the forum state.[22] 24-7 Machinery has not met its burden to make a prima facie case that it would be proper for this Court to exercise personal jurisdiction over Mustang CAT. Mustang CAT's Motion (Dkt. 47) is **GRANTED**, and 24-7 Machinery's claim against it is hereby **DISMISSED WITHOUT PREJUDICE**.[23]

## II. Failure to State a Claim

### *Legal Standard*

As with Rule 12(b)(2), when considering a motion under Rule 12(b)(6) the Court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.[24] To survive such a motion, a plaintiff must plead "enough

---

conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis.").

[21] *See Eighteen Seventy*, 32 F.4th at 970 (discussing *Calder v. Jones*, *Newsome*, and *Dudnikov*).

[22] Because the Court concludes that 24-7 Machinery has failed to demonstrate the requisite minimum contacts on the part of Mustang CAT, it need not consider the parties' fair play and substantial justice arguments.

[23] Similarly, the Court does not consider Mustang CAT's 12(b)(6) arguments because 12(b)(2) provides sufficient reason for dismissal.

[24] *Russel v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008).

facts to state a claim to relief that is plausible on its face."[25] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."[26] "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[27] "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true."[28]

### *Analysis*

**a. Warren CAT**

Both Counts of the Amended Complaint—(1) negligence and/or failure to exercise due care; and (2) breach of express contractual warranty—are alleged against Warren CAT. Under the negligence Count, the Amended Complaint alleges two duties on the part of Warren CAT that, on their face, are separate from the alleged warranty. They are:

> "25. Once Warren CAT and its agent, Mustang CAT, investigated the turbocharger failures in furtherance of their repair work, they owed 24-7 Machinery a duty to use reasonable skill, care, and diligence in performance

---

[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). 24-7 Machinery repeatedly references the "no set of facts" standard that *Twombly* did away with. *E.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[26] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[27] *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

[28] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also* 5A Charles Alan Wright, et al. *Federal Practice and Procedure* § 1327 (4th ed. 2018) ("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.").

of the investigation and repairs. *See, e.g., Oklahoma Uniform Jury Instruction 23.15a, 9.1.*

26. Once Warren CAT and Mustang CAT investigated the turbocharger failures in furtherance of their repair work and providing parts, they owed 24-7 Machinery a duty that their work would be done in a workmanlike manner and be reasonably fit for its intended use. *See, e.g., Oklahoma Uniform Jury Instruction 23.15a, 9.1.*"[29]

The referenced Oklahoma Uniform Jury Instruction states: "By agreeing to perform work in a contract, a person promises to use reasonable skill, care, and diligence and that the work will be done in a workmanlike manner and be reasonably fit for its intended use."[30] Under Oklahoma law, these duties are generally "implied in every contract for work or services."[31]

Warren CAT challenges the sufficiency of these allegations on several grounds. To start, Warren CAT argues that the Amended Complaint engages in impermissible group pleading. Because the above allegations are leveled against both Warren CAT and Mustang CAT, Warrant CAT complains that it lacked adequate notice of the claims against it. The Court is not convinced. The Amended Complaint alleges that both Warren CAT and Mustang CAT individually owed and breached duties. That is a very far cry from the kinds of broadside allegations against undifferentiated "Defendants" that offend Rule 8(a)(2)'s notice requirement.[32]

---

[29] Pl.'s Am. Compl. (Dkt. 42), ¶¶ 25, 26.

[30] OUJI-CIV 23.15A. Instruction 9.1, also referenced, simply states the elements of a negligence claim.

[31] *Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981).

[32] For support, Warren CAT references *Robbins v. Oklahoma*, 519 F.3d 1242, 1246–50 (10th Cir. 2008) and *VanZandt v. Oklahoma Dept. of Human Servs.*, 276 F. App'x 843,

9

Next, Warren CAT notes that the duties it allegedly owed must have arisen out of an "agree[ment] to perform work in a contract,"[33] and the only contract alleged in the Amended Complaint is the warranty coverage of the Purchased Units. According to Warren CAT, 24-7 Machinery makes no allegation that continuing obligations arose from the mere sale of the Purchased Units. And, as discussed below, Warren CAT disputes that it owed any duties under the warranty.

24-7 Machinery's Response (Dkt. 54) is not a model of clarity, but it appears to agree that the duties underlying the negligence claim are also tied up with the warranty.[34] The only implication of another possible source of contractual duties comes in the Conclusion, where 24-7 Machinery states that "once Warren CAT accepted the work to complete repairs and supply parts, it owed a duty to do that work in a timely and workmanlike manner."[35] But the Amended Complaint does not allege that there was a separate contract for this work, and indeed links it to the warranty in the paragraph

---

848–49 (10th Cir. 2008) (unpublished). Both of these cases involved multiple defendants occupying very different roles in the course of conduct allegedly resulting in injury. Notwithstanding those differences, the complaints attributed offending behavior to "Defendants" collectively, even when it was clear that only some subset of the defendants could have engaged in certain alleged actions. Here, Warren CAT and Mustang CAT are relatively similar entities, playing relatively similar roles in the offense as alleged. There is nothing inherently illogical, implausible, or unclear about the above allegations, and thus no notice problem.

[33] OUJI-CIV 23.15A.

[34] *E.g.*, Pl.'s Resp. (Dkt. 54), at 8 ("IV. WARREN CAT'S WARRANTY AND DUTIES ARE PROPERLY PLEAD.").

[35] Pl.'s Resp. (Dkt. 54), at 10.

preceding the two reproduced above.[36] In addition, no other contract for work is attached to the Amended Complaint, only the sales agreements for each of the Purchased Units.[37] Accordingly, the Court finds that both the negligence and breach of contract claims against Warren CAT depend on the applicability of the alleged warranty.

Turning to the warranty, the arguments between the parties pass like ships in the night. 24-7 Machinery spends much of its Response (Dkt. 54) condemning Warren CAT for selling a warranty and then turning around and disclaiming it. 24-7 Machinery highlights the unenforceable and unconscionable nature of such actions, and the available options to remedy them. In its Motion (Dkt. 45) and Reply (Dkt. 57), Warren CAT maintains that it is not disclaiming the existence of the warranty or trying to limit the warranty's scope after the fact. Rather, Warren CAT argues that any obligations under the warranty are owed by Caterpillar, and that the language of the sales agreement make this clear. Notably, Caterpillar does not dispute the existence or validity of the warranty.

The following language appears under the "WARRANTY, CLAIMS, AND DAMAGES" heading in each of the sales agreements:

> "The warranties on the Equipment [the Purchased Units] shall be the manufacturer's [Caterpillar's] warranties, if any, and only if in writing. There are no warranties from Seller [Warren CAT]. Purchaser [24-7 Machinery] shall look to the manufacturer for the description of the warranty and for any warranty claims. . . . No affirmation, representation, or warranty made by an employee or agent of Seller shall be enforceable unless it is specifically included in this Agreement. . . . Seller shall not be liable to Purchaser, for

---

[36] Pl.'s Am. Compl. (Dkt. 42), ¶ 24 ("Warren CAT and its agent, Mustang CAT, owed 24-7 Machinery a duty and contractual obligation for service, repair, and parts replacement on the Purchased Units and for warranty on parts replacement.").

[37] Ex. A (Dkt. 42-1).

any failure of the Equipment to operate, or for any delay, loss, or expense caused thereby or for any interruption of service or use of the Equipment while such Equipment is undergoing servicing or repair."

Remarkably, 24-7 Machinery does not even attempt to grapple with this language. Instead, 24-7 Machinery relies on another section of the sales agreements that refers to the warranty as "the Warren CAT/Caterpillar Warranty," as well as the fact that the sales agreements are on Warren CAT letterhead.[38] 24-7 Machinery insists that its allegations, taken as true, are enough to demonstrate that Warren CAT plausibly "owed and breached the warranty bearing its name."[39] That assertion is flatly contradicted by the plain language of the contracts that 24-7 Machinery chose to attach to its Amended Complaint as evidence. The Court need not, and does not, accept 24-7 Machinery's contrary allegations as true.

The Court finds that 24-7 Machinery has not plausibly alleged that Warren CAT owed it any duties under the equipment warranty. Because the existence of such duties underlies both of 24-7 Machinery's claims against Warren CAT, 24-7 Machinery has not met its burden to plausibly state a claim for relief. Warren CAT's Motion to Dismiss (Dkt. 45) is **GRANTED** and 24-7 Machinery's claims against Warren CAT are hereby **DISMISSED WITHOUT PREJUDICE**.

    **b. Caterpillar**

Only Count II, breach of express contractual warranty, is alleged against Caterpillar. As noted above, Caterpillar does not dispute the existence of equipment warranties

---

[38] Pl.'s Am. Compl. (Dkt. 42), ¶¶ 31–33.
[39] Pl.'s Resp. (Dkt. 54), at 5.

covering the Purchased Units. Rather, Caterpillar moves to dismiss on the ground that it was not given an opportunity to cure the alleged breach of warranty.

Count II of the Amended Complaint (Dkt. 42) alleges that Caterpillar breached the warranty by failing to timely repair and replace necessary parts, and that the equipment warranty failed of its essential purpose. To recover on a breach of express warranty claim, "a party must show that a warranty exists, the warranty was breached, and that the breach was the proximate cause of the loss suffered."[40] Under Oklahoma law, a warranty fails of its essential purpose after the warrantor "is afforded a reasonable opportunity to correct the defect and fails timely to respond or is repeatedly unsuccessful in the efforts to meet the warranty-imposed obligation."[41] Whether or not a warranty has failed of its essential purpose has an impact on available remedies: under a warranty that has not failed, a buyer is limited to the remedies contemplated in the warranty; under a warranty that has failed, all remedies under the Uniform Commercial Code as adopted in Oklahoma are available.[42]

The Court finds that 24-7 Machinery has plausibly alleged both breach of an express warranty and failure of essential purpose. In its Motion (Dkt. 51), Caterpillar attempts to conflate the two issues, erroneously reading a "reasonable opportunity to correct" into the

---

[40] *Collins Radio Co. of Dallas, Tex. v. Bell*, 623 P.2d 1039, 1052 (Okla Civ. App. 1980).

[41] *Osburn v. Bendix Home Sys., Inc.*, 613 P.2d 445, 449–50 (Okla. 1980).

[42] *Id.* This holding of *Osburn* is no longer the majority rule, and the case underlying that piece of the opinion has since been abrogated. *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 615–17 (Ill. 2006) (abrogating *Adams v. J.I. Case Co.*, 261 N.E.2d 1 (Ill. 1970)). Nonetheless, while sitting in diversity the Court must follow Oklahoma law as pronounced by the state's highest court. *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659, 662 (10th Cir. 1995).

elements of a breach of express warranty.[43] Setting aside that attempt, 24-7 Machinery has plausibly alleged the existence of a warranty (which Caterpillar does not contest);[44] breach of that warranty, in both the alleged defective condition of the turbochargers and in Caterpillar's alleged failure to repair or replace them;[45] and that the breach was the proximate cause of the loss suffered, in that the broken-down Purchased Units sitting idle incurred lost profits, delays, costs of finding replacement units, etc.[46] This is enough to state a claim for breach of express warranty.

It is true, as Caterpillar argues, that the Amended Complaint (Dkt. 42) contains no discrete, express allegation that 24-7 Machinery notified Caterpillar itself of the failed parts. Nevertheless, taking the allegations as true and drawing all reasonable inferences in favor of 24-7 Machinery, the Court finds it to be plausibly alleged that Caterpillar was given reasonable opportunity to correct the breach. 24-7 Machinery alleges that it approached two authorized Caterpillar dealers, Warren CAT and Mustang CAT, about the problem.[47] It also alleges that orders for replacement turbochargers were communicated to Caterpillar at some point.[48] One could reasonably infer from these alleged facts that

---

[43] Def. Caterpillar's Mot. (Dkt. 51), at 6 ("Absent an allegation that Caterpillar was afforded a reasonable opportunity to cure the alleged defects, Plaintiff essentially fails to assert that Caterpillar breached a warranty, thereby proximately causing alleged damages.").

[44] *See, e.g.*, Pl.'s Am. Compl. (Dkt. 42), ¶¶ 31–34.

[45] *See, e.g.*, Pl.'s Am. Compl. (Dkt. 42), ¶¶ 35, 36.

[46] *See, e.g.*, Pl.'s Am. Compl. (Dkt. 42), ¶ 38.

[47] *See, e.g.*, Pl.'s Am. Compl. (Dkt. 42), ¶¶ 17–19, 21, 22.

[48] *See* Pl.'s Am. Compl. (Dkt. 42), ¶¶ 21.

Caterpillar was made aware of the equipment problems prior to this action. At this stage, that is enough to plausibly allege failure of purpose. Caterpillar's Motion (Dkt. 51) is **DENIED**.

### *Conclusion*

For the reasons explained above, Mustang CAT and Warren CAT's Motions to Dismiss (Dkts. 45, 47) are **GRANTED**, and 24-7 Machinery's claims against those parties are **DISMISSED WITHOUT PREJUDICE**. Caterpillar's Motion to Dismiss (Dkt. 51) is **DENIED**.

**IT IS SO ORDERED** this 19th day of March 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE